UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESSICA STEWART,<br><br>                Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1]<br><br>                Defendant. | CASE NO. 2:16-cv-01260 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken, pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

ORDER ON PLAINTIFF'S COMPLAINT - 1

Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 12, 13).

Plaintiff suffers from regular panic attacks. These attacks apparently began after plaintiff was the victim of bullying in middle school, when she was "teased, abused/physically attacked." AR. 445. She was diagnosed around the age of 14 with manic depression and was put on Zoloft. *Id*. As a biracial individual, plaintiff experienced racial bias herself, and witnessed racial prejudice against her mother while growing up. Both of her parents appear to have had severe issues with substance abuse. After experiencing several long episodes of agoraphobia, during which she did not leave the house, plaintiff had to repeat the sixth grade. Although plaintiff left school in ninth grade, she later obtained her GED.

Despite regular episodes of panic attacks, plaintiff worked for four years at the Salvation Army, where they allegedly were aware of her panic attacks and accommodated them, allowing her to go into a back room for an hour or so to recover. According to plaintiff, despite her employer's accommodation of her panic attacks, due to attendance issues, she was about to be fired from the Salvation Army, so she quit and attempted a new job as a cashier. Unfortunately, this was an unsuccessful work attempt and plaintiff subsequently filed Social Security Applications, alleging disability.

The ALJ failed to credit fully the medical opinion of an examining doctor on the basis of plaintiff's accommodated work at the Salvation Army. However, the ALJ failed to acknowledge that this work was accommodated and that plaintiff was allowed to take long unscheduled breaks when she had panic attacks. Furthermore, this work at the

Salvation Army was prior to plaintiff's amended alleged date of disability onset. In addition, the ALJ's finding, without citation, that plaintiff's recent treatment note demonstrated improvement in symptoms is not substantiated by the record, which demonstrates symptoms that regularly waxed and waned, and regularly included panic attacks numerous times per week.

Therefore, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, JESSICA STEWART, was born in 1981 and was 31 years old on the amended alleged date of disability onset of November 21, 2012 (*see* AR. 15, 35, 218-19, 221-26).

After leaving her work at the Salvation Army because she was about to be terminated for attendance issues, plaintiff last worked part-time for less than 9 months as a cashier but quit because she kept getting sick with panic attacks (AR. 52).

According to the ALJ, plaintiff has at least the severe impairments of "left MCL strain, medication side effects, headaches and tremor, affective disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c))" (AR. 17).

At the time of the hearing, plaintiff was living with her boyfriend and the disabled veteran for whom her boyfriend is the live-in caregiver (AR. 44).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 102-15, 116-19, 132-45, 146-59). Plaintiff's requested hearing was held before Administrative Law Judge Kimberly Boyce ("the ALJ") on October 15, 2014 (*see* AR. 32-99). On February 27, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 12-31).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) The ALJ erred in her weighing of the medical opinion evidence; (2) The ALJ erred in her finding that plaintiff's allegations were not fully credible; (3) The ALJ erred in her weighing of the lay witness testimony of Laurie Fuller; and (4) Whether or not the proper remedy for the errors in the ALJ's decision is remand for benefits (*see* Dkt. 11, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1)     **Did the ALJ err in her weighing of the medical opinion evidence?**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting the opinions of one treating and two examining sources in favor of the opinion

of state agency sources. Dkt. 11, p. 8-13. However, as noted by defendant, the "medical opinions rejected by the ALJ were contradicted by the State agency doctors." Dkt. 12, p. 7 (citing AR. 24-25, 102-29, 132-59). Defendant argues, correctly, that therefore, the "specific and legitimate reason standard applies." *Id*.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

Dr. William Wilkinson, Ed.D., evaluated plaintiff and conducted a MSE in September 2013. AR. 385-92. He opined that plaintiff is markedly limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual; maintain appropriate behavior in a work setting; and complete a normal workday and workweek without interruptions from psychologically-based symptoms, as well as moderately limited in several areas of functioning. AR. 387-88.

As noted by the ALJ, Dr. Wilkinson did not review any records, which is a relevant factor when considering what weight to give to particular medical opinion. AR. 24, 385; 20 C.F.R. §§ 404.1527 (c)(6), 416.927 (c)(6). However it is not a legitimate

rationale for failing to credit fully all of Dr. Wilkinson's opinions in of itself, as the opinion from an examining physician is "entitled to greater weight than the opinion of a non-examining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1). Here, the ALJ gives the greatest weight to the non-examining doctors.

The ALJ gave little weight to the opinion of Dr. Wilkinson, in part with a finding that his opinion is inconsistent with the overall record. AR. 23-24. The ALJ specified that plaintiff's record demonstrates that she "maintained employment for four years at Salvation Army despite her alleged mental health problems [and] she left to take another job." AR. 24. However, there are at least two problems with this rationale.

First, it is true that plaintiff was able to maintain employment for four years at Salvation Army despite her panic attacks and other symptoms. AR. 24, 258. Plaintiff testified that she suffered from panic attacks while working at Salvation Army, which was from May 2004 until December 2008. AR. 258. However, this work occurred prior to plaintiff's amended alleged date of disability onset, November 1, 2012. *See* AR. 15. Plaintiff reported to her doctor in 2010, after she stopped working, that her panic attacks had become worse. AR. 344.

Perhaps most importantly, plaintiff's work at Salvation Army was accommodated. *See* AR. 55. Plaintiff testified that her employer knew about her panic attacks and would allow her to leave her workstation and go to the back for an hour or so when she was having difficulties due to her panic attacks. *See* AR. 59. She testified that this happened at least a couple times a week. *See id*. The ALJ does not cite to anything in the record
ORDER ON PLAINTIFF'S COMPLAINT - 6

contradicting this allegation from plaintiff, and does not appear to have attempted to contact the employer to verify plaintiff's work accommodations.

The ALJ's finding that plaintiff's ability to work "for four years at Salvation Army despite her alleged mental health problems" is inconsistent with Dr. Wilkinson's opinions, which includes the opinion that plaintiff suffered from marked limitations in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform activities within a schedule is not based on substantial evidence in the record as a whole. AR. 387-88. In fact, Dr. Wilkinson's opinions are consistent with plaintiff's testimony regarding her interruptions at work from psychologically-based symptoms.

The ALJ also relied on a finding that Dr. Wilkinson's opinions are inconsistent with the fact that plaintiff left her work at the Salvation Army for another job. However, plaintiff testified that she left her work at Salvation Army because her panic attacks became worse near the end of her employment there and she was about to be fired for attendance issues, as she was missing work a couple times a week. AR. 59-60. Furthermore, it appears that plaintiff's subsequent job was an unsuccessful work attempt, and only was part-time work. AR. 52, 233. Plaintiff testified that she left her subsequent job because of her impairments, as the stress and her mental health difficulties were making her sick. AR. 52. Official earnings records demonstrate that this subsequent job also only was part-time, as she earned less than $6000 over the course of approximately 9 months, while she was working at this job. AR. 233, 258. One of only three areas in which Dr. Wilkinson opined that plaintiff suffered from marked difficulties was in her

ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *See* AR. 387. This opinion is entirely consistent with the fact that plaintiff left her job at Salvation Army because she was about to be fired for attendance issues, and with the fact that she could not successfully maintain her subsequent part-time job for more than 9 months. Therefore, for the reasons stated, the Court concludes that the ALJ's finding that Dr. Wilkinson's opinions were inconsistent with the fact that plaintiff left her job at Salvation Army to take another job is not a finding based on substantial evidence in the record as a whole.

When failing to credit fully Dr. Wilkinson's opinions, the ALJ also found that plaintiff "only recently sought mental health treatment." AR. 24. The ALJ fails to explain how the fact that plaintiff may not have been in mental health treatment when she was being evaluated by Dr. Wilkinson affects the legitimacy of Dr. Wilkinson's opinions. Plaintiff contends that her "lack of treatment has no bearing on the opinions of the treating and examining sources." Dkt. 11, p. 12. The Court agrees, and concludes that the ALJ did not explain how plaintiff's lack of treatment calls into question the opinion of Dr. Wilkinson, who conducted a mental status examination ("MSE"). *See* AR. 388-92. For example, during his MSE, Dr. Wilkinson noted that plaintiff demonstrated "a silly, spontaneous laugh   . . . .   usually self-conscious or laughing or embarrassed at herself." AR. 388-89. He also observed that her affect was congruent with her panicky, anxious, and down mood. AR. 389. He opined that she had a few areas in which she suffered from marked limitations, including markedly limited in her ability to maintain attendance and behavior. The ALJ does not explain how plaintiff's presentation or Dr. Wilkinson's

opinions are affected by whether or not plaintiff was seeking mental health treatment at the time. Therefore, the Court concludes that whether or not plaintiff was in mental health treatment when Dr. Wilkinson was evaluating her presentation and symptoms is not a legitimate reason for failing to credit fully his opinions.

Finally, the ALJ failed to credit fully Dr. Wilkinson's opinions with a finding that plaintiff's recent "treatment notes show improvement in symptoms." AR. 24. However, the ALJ does not cite any treatment notes in support of this assessment with respect to Dr. Wilkinson's opinions. In a separate section of the ALJ's written decision, the ALJ noted one treatment note in which plaintiff reported that her mood swings were largely controlled by current medication. *See* AR. 23. However, as acknowledged by the ALJ, even at that treatment session, plaintiff "continued to endorse high anxiety." *See id*. Dr. Wilkinson diagnosed plaintiff with both bipolar disorder and anxiety disorder. *See* AR. 387. Therefore, even if the ALJ's finding of improvement with respect to her bipolar disorder is supported by substantial evidence in the record as a whole, which it does not appear to be, such finding still is not a legitimate reason for failing to credit fully Dr. Wilkinson's opinions which also are based on plaintiff's anxiety disorder, in which there does not appear to have been much improvement.

Plaintiff's medical record demonstrates that in September, 2010, plaintiff reported that she was "doing little better with the medication, still have anxiety but not that many (sic)." AR. 347; *see also* AR. 352 ("panic attacks are decreasing but still getting them 3 times a week"); AR. 355 ("can get on the bus now I'm not having a full-blown panic attack"). However, by November 2010, plaintiff reported that she was suffering from

"worsening panic attacks at night." AR. 362. In June 2011, plaintiff reported that she was only getting panic attacks occasionally. AR. 370. However, the treating physician nevertheless observed that plaintiff was anxious. AR. 371. By September, 2011, panic attacks were again occurring more regularly, with plaintiff "noting panic attacks are at least once a week." AR. 373. At this appointment, her treating physician again observed that plaintiff appeared anxious. AR. 374. On December 4, 2012, Dr. Margaret Mullen, M.D. observed that plaintiff was "nervous and shaky." AR. 377. By December 6, 2012, her panic attacks again were occurring daily. AR. 379. Dr. Mullen again observed that plaintiff was a "shaky, nervous gal." AR. 380. In December, 2013, plaintiff was reporting waking up from sleep because of panic attacks. AR. 406. On June 24, 2014, plaintiff reported that her panic attacks were occurring 4 times a week. AR. 433. Finally, in the treatment note perhaps relied on by the ALJ, in October 2014, plaintiff reported that her mood swings "are largely controlled by the current medication," although she noted that high anxiety persisted. AR. 460. Therefore, the Court concludes that even if this one final treatment record demonstrated an overall improvement in plaintiff's symptoms related to her bipolar disorder, she nevertheless still was experiencing high anxiety. *See id*. As Dr. Wilkinson's opinions were based in part on his diagnosis of an anxiety disorder, this one treatment record from October 2014 does not demonstrate sufficient improvement in anxiety symptoms to support the failure to credit fully all of Dr. Wilkinson's opinions. Even if it did, plaintiff nevertheless still would have demonstrated almost 2 years of potentially disabling limitations prior to this October, 2014 record suggesting, at the least, a closed period of disability.

For the reasons stated and based on the record as a whole, Court concludes that the ALJ failed to provide specific and legitimate reasons based on substantial evidence in the record as a whole for her failure to credit fully the medical opinions of Dr. Wilkinson. The Court also concludes that the error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Dr. Wilkinson opined that plaintiff suffered from marked limitations in three areas of functioning related to work, such as marked limitations in plaintiff's ability to regularly maintain attendance and be punctual; maintain appropriate behavior in a work setting; and complete a normal workday and workweek without interruptions from

psychologically-based symptoms. AR. 387-88. These limitations easily could lead to a finding of disability. Therefore, the Court cannot conclude with confidence "that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56).

However, the extent of plaintiff's accommodation at her previous employment prior to alleged period of disability while she appears to have been suffering from panic attacks does not appear to have been documented and it does not appear that the ALJ attempted to contact this employer. In addition, many records appear to be absent from the record. Therefore, it is possible that a remand for further administrative purposes would serve a useful purpose. Therefore, this matter is reversed and remanded for further administrative proceedings, as opposed to reversed with a direction to award benefits, as requested by plaintiff. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citations omitted) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).

**(2)  Did the ALJ err in failing to credit fully plaintiff's allegations and testimony?**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

However, the Court notes that the ALJ failed to credit fully plaintiff's allegations and testimony regarding her tremor, but does not appear to appreciate and discuss the extent to which this tremor was observed by various treatment providers, including a neurologist. *See, e.g.*, AR. 359; AR. 365; AR. 427 (in May of 2014, plaintiff reported that she has tremors, "but not all the time," and that they now are worse and her physician observed that a "coarse tremor [was] seen"); AR. 432; AR. 435 (her neurologist, Dr. Craig Brooker, M.D., observed that although there was no resting tremor, when she moved, the tremor was present over both hands, left greater than the right, and diagnosed plaintiff with an essential tremor, with probable component of a physiological tremor); AR. 450 (in 2014, plaintiff's treatment provider ARNP Patricia Larson observed that plaintiff's "left-hand has a familiar tremor, right hand was shaking too"). Based on the record, the Court concludes that this allegation warrants further investigation, as clearly, multiple medical providers actually observed the tremors, and this allegation is supported by more than plaintiff's report.

The ALJ also failed to credit fully plaintiff's allegations and testimony on the basis of her failure to seek out mental health treatment. *See* AR. 22-23. However, the ALJ does not appear to evaluate the extent to which plaintiff's anxiety and agoraphobia have contributed to plaintiff's lack of treatment, or the extent to which plaintiff's homelessness and lack of insurance also contributed. Plaintiff's complaints to all of her treatment providers regarding her anxiety, including those she saw for physical ailments, is documented throughout the entire record. *See, e.g.*, AR. 349 (plaintiff discusses her anxiety/panic attacks at her annual exam in September, 2010, two years prior to her

amended AOD). Plaintiff's testimony at her hearing regarding not seeking out mental health treatment until later may be testimony concerning when she specifically began mental health counseling, although the ALJ appears to have interpreted this as to when she first complained about mental health symptoms. *See, e.g.*, AR. 23. It does not appear that these earlier Sea Mar records are included in the record, so the extent of plaintiff's complaints about mental health symptoms at this earlier time is unclear. Similarly, plaintiff alleges visitations to the ER for panic attacks, but those records, also, do not appear to be in the record. Plaintiff may have been confused, may have inaccurate memory (*see, e.g.,* AR. 389 (doctor opines that plaintiff is "not a good historian")), or may have reported that she was not connected to mental health treatment because she was not yet in counseling even though she was complaining about mental health symptoms. Plaintiff's complaints regarding mental health symptoms throughout the record and to what extent and/or why she did not seek out mental health treatment should be addressed more fully following remand of this matter.

### (3) Did the ALJ err in her weighing of the lay witness testimony of Laurie Fuller?

Plaintiff contends that the ALJ erred by failing to give germane reasons for rejecting the testimony of Laurie Fuller. Dkt. 11, pp. 11-15. Plaintiff notes that the ALJ did not discuss any of Ms. Fuller's testimony regarding plaintiff's limitations, such as that plaintiff required an escort to get to and from work, even though she lived three buildings away from work because plaintiff was afraid to go unescorted. AR. 83, 86. Defendant contends that there is no error as the ALJ noted that "the record showed

improvement in symptoms and functionality with medication." Dkt. 12, p. 12 (citing AR. 23).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources", *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner, supra*, 613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

The only reason offered by the ALJ for failing to credit fully the lay testimony of Ms. Fuller was the ALJ's finding of improvement. However, the Court already has discussed that this finding is not based on substantial evidence in the record as a whole, *see supra*, section 1. Therefore, the lay testimony should be evaluated anew following remand of this matter. Furthermore, on remand, the ALJ should acknowledge not only the positive aspects of the testimony from Ms. Fuller, but also her testimony of plaintiff's limitations. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*

*v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the Commissioner "may not reject 'significant probative evidence' without explanation").

**(4)  Whether or not the proper remedy for the errors in the ALJ's decision is remand for benefits.**

This issue already has been discussed, *see supra*, section 1.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and remanded for further Administrative consideration.

**JUDGMENT** should be for PLAINTIFF and the case should be closed.

Dated this 9th day of March, 2017.

_____
J. Richard Creatura
United States Magistrate Judge